IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **JONATHAN ROBINSON,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No: 5:13-cv-292 (MTT) |
| | : | |
| Commissioner **BRIAN OWENS**, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |

## RECOMMENDATION

Before the Court are the Motions to Dismiss filed by Defendants Brian Owens, Gregory McLaughlin, James Hinton, Talisha Moody, Trevonza Bobbitt, Kevin Davis, Peter Eaddie, Andre Robinson, and Ray Searcy.[1] Docs. 24, 38, 44. In the Motions, Defendants principally argue that Plaintiff Jonathan Robinson's claims against them should be dismissed because of failure to state a claim, Eleventh Amendment immunity, and qualified immunity. For the reasons stated below, it is **RECOMMENDED** that Defendants' Motions to Dismiss be **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 2013, Plaintiff Jonathan Robinson, an inmate presently confined at Autry State Prison, filed his complaint pursuant to 42 U.S.C. § 1983 against Defendants Commissioner Brian Owens, Warden Gregory McLaughlin, Deputy Warden James Hinton, Deputy Warden Talisha Moody, Unit Manager Trevonza Bobbitt, Unit Manager Kevin Davis, Lieutenant Peter Eaddie, Counselor Andre Robinson, and Officer Ray Searcy. Docs. 1, 7. According to the complaint, between February 2011 and February 2013, Plaintiff experienced six retaliatory transfers after he filed numerous grievances and complaints about his conditions of confinement. Doc. 1 at 6. On June 14, 2011, Plaintiff was transferred to Macon State Prison. Id. at 7. Upon his

---

[1] The Clerk of Court is instructed to amend the docket in order to identify Andrea Robinson by his correct name, which is Andre Robinson.

arrival at Macon State Prison, he filed a grievance based on his "intentional and purposeful placement by DOC officials in an extremely dangerous environment due to my litigious propensities." Id. Approximately one month later, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1997 in which he sought "federal intervention" to remedy "a systemic and pervasive culture of fomenting violence and breached security concerns. Id. at 8.

At some unspecified date, Plaintiff overheard Counselor Robinson and Officer Searcy "expressing their displeasure with the numerosity [sic] of grievances" that he had filed. Id. at 9. Plaintiff alleges that he attempted to submit a grievance to Counselor Robinson about the "inappropriate gang affiliations" of Officer Searcy, but Counselor Robinson refused to accept this grievance. Id. On August 3, 2011, Counselor Robinson allegedly told Plaintiff that he filed too many grievances and that something could happen to him if he wasn't careful. Id. Plaintiff submitted a grievance about Counselor Robinson's "implied threat" on August 4, 2011. Id. Plaintiff did not see Counselor Robinson until approximately "a week and a half" after Plaintiff lodged a grievance about him on August 4, 2011. Id.

On August 16, 2011, Plaintiff observed Officer Searcy talking to several inmates affiliated with a gang. Id. The next day, four or five inmates attacked Plaintiff as he exited the dining hall. Id. at 9-10. One of Plaintiff's attackers allegedly told him, "[t]his [is] for running your mouth against the administration." Id. at 10. Plaintiff fought back and ran to the exit door to seek help from someone inside the dining hall. Id. Lieutenant Eaddie opened the door, asked Plaintiff some questions, and closed the door. Id. at 11. Within minutes, two nonparty officers arrived on the scene, but no officers were present during the attack. Id. Plaintiff was escorted to the medical unit. Id. Warden McLaughlin and Deputy Warden Hinton asked Plaintiff about the incident while he was receiving medical treatment. Id. During their conversation, Warden McLaughlin allegedly

2

told Plaintiff that "running [his] mouth" was one probable reason for his injuries. Id.

Plaintiff alleges that before he was attacked he notified Deputy Warden Moody, Unit Manager Bobbitt, and Unit Manager Davis about "lapses in security, the complicity of gang affiliated officers, the lack of training and/or apathy regarding security protocols, and other deficiencies" through his many grievances and appeals. Id. at 12. Plaintiff also alleges that Commissioner Owens was notified through "[t]he inexorable grievances, reports, and appeals to the Commissioner's Office pertaining to the gross negligence and official malfeasance permeating the penal system." Id. at 12-13. After recuperating from his attack and filing additional grievances, Plaintiff was transferred from Macon State Prison on September 15, 2011. Id. at 13.

Based on these allegations, Plaintiff sued the nine named Defendants in their individual and official capacities. Docs. 1, 7. In relief, Plaintiff sought declaratory relief, injunctive relief, and monetary damages. Doc. 1 at 17-18. Following a frivolity review of Plaintiff's complaint under 28 U.S.C. § 1915A, the Court filed an order, which concluded that Plaintiff had stated a cognizable retaliation claim against Counselor Robinson and Officer Searcy and that Plaintiff had stated a non-frivolous failure to protect claim against Commissioner Owens, Warden McLaughlin, Deputy Warden Hinton, Deputy Warden Moody, Unit Manager Bobbitt, Unit Manager Davis, Lieutenant Eaddie, Counselor Robinson, and Officer Searcy. Doc. 8. The nine named Defendants filed three separate Motions to Dismiss. Docs. 24, 38, 44. Plaintiff responded to Defendants' Motions to Dismiss. Docs. 31, 51, 52. Deputy Warden Hinton replied to Plaintiff's response. Doc. 56.

DISCUSSION

Plaintiff fails to state a cognizable claim upon which relief may be granted regarding his claims for retaliation and failure to protect. In addition, Defendants are entitled to Eleventh

3

Amendment immunity for claims against them in their official capacities and to qualified immunity for claims against them in their individual capacities.

A.     Failure to State a Claim

   *1. Applicable Legal Standards*

A complaint is subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, citing Twombly, 550 U.S. at 556. When considering a motion to dismiss for failure to state a claim, the Court must accept all allegations in the complaint as true, and the Court must construe the facts in the light most favorable to the plaintiff. Lopez v. Target Corp., 676 F.3d 1230, 1232 (11th Cir. 2012). The Court, however, is not bound to accept as true "'a legal conclusion couched as a factual allegation.'" Iqbal, 556 U.S. at 678, quoting Twombly, 550 U.S. at 555. It is well-established that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679, citing Twombly, 550 U.S. at 556. Additionally, *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

   *2. Plaintiff's Retaliation Claim*

Under the First Amendment, a prison official may not retaliate against an inmate for exercising his free speech rights, which includes the right to file grievances about the conditions of

4

his confinement. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). To state a cognizable retaliation claim under the First Amendment, the prisoner must establish that: (1) his speech was constitutionally protected; (2) the prison official's retaliatory conduct adversely affected the protected speech; and (3) there is a causal connection between the retaliatory action and the adverse effect on the speech. Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008). The adverse action that the prisoner suffers as a result of the prison official's alleged retaliation must be such that it "would likely deter a person of ordinary firmness from engaging in such speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). "The causal connection inquiry asks whether the defendants were subjectively motivated to discipline because [the prisoner] complained of some of the conditions of his confinement." Id. at 1278.

In this case, Plaintiff alleges that he experienced six retaliatory transfers because he filed numerous grievances about his conditions of confinement at different prisons between February 2011 and February 2013. Plaintiff also appears to allege that Counselor Robinson and Officer Searcy conspired to have Plaintiff attacked by unnamed, gang-affiliated inmates on August 17, 2011, because Plaintiff continued to file numerous grievances about his conditions of confinement at Macon State Prison. Thus, the alleged retaliatory conduct at issue here relates to both the transfers to different prisons and the attack by other inmates.

As to the first type of allegedly retaliatory conduct, Plaintiff fails to state a plausible claim for retaliation because he does not allege that Counselor Robinson or Officer Searcy, both of whom apparently work in a non-supervisory capacity at Macon State Prison, initiated or authorized the six transfers about which Plaintiff complains. See O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (quotations and brackets omitted) ("An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were the

5

result of the inmate's having filed a grievance concerning the conditions of his imprisonment."). To the contrary, Plaintiff alleges that several named nonparties were responsible for his transfers to different prisons and that nonparty Hilton Hall specifically ordered Plaintiff's transfer from Macon State Prison in September 2011. Stated another way, Plaintiff does not allege that Counselor Robinson or Officer Searcy had any involvement whatsoever in the six transfers. Accordingly, Plaintiff fails to plead sufficiently specific facts to establish causation, which requires Plaintiff to show that Counselor Robinson and Officer Hall initiated or authorized the six transfers because they were "subjectively motivated to discipline" him for exercising his free speech rights. Smith, 532 F.3d at 1278.

As to the second type of allegedly retaliatory conduct, Plaintiff fails to state a plausible claim for retaliation because his vague and conclusory allegations are insufficient to establish that Counselor Robinson and Officer Searcy conspired to have Plaintiff attacked by unnamed, gang-affiliated inmates. See Rosa v. Florida Department of Corrections, 522 Fed. Appx. 710, 715-716 (11th Cir. 2013) (affirming the dismissal of an inmate's retaliation claim for failure to state a claim based on the inmate's vague and conclusory allegations.). For example, although Plaintiff alleges that he once overheard Counselor Robinson and Officer Searcy expressing their irritation with the volume of grievances that he filed, Plaintiff does not specify when he overheard this conversation or whether the conversation between Counselor Robinson and Officer Searcy occurred before or after the attack took place. Plaintiff also fails to explain how or why any stray comments made by Counselor Robinson or Officer Searcy relate to a broader conspiracy to have Plaintiff attacked by other inmates. Similarly, while Plaintiff alleges that he observed Officer Searcy talking to several inmates affiliated with a gang one day before the attack, Plaintiff fails to identify any causal connection between this conversation and the attack by other inmates he later

6

experienced. See Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) ("To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights."). It is also unclear whether the inmates who attacked Plaintiff were the same gang-affiliated inmates that Plaintiff observed talking to Officer Searcy. Moreover, there is no indication that the allegedly retaliatory conduct "adversely affected the protected speech" because Plaintiff concedes that he continued to file myriad grievances about the conditions of his confinement at Macon State Prison after the attack. Douglas, 535 F.3d at 1321, quoting Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).

Accordingly, even after accepting the factual allegations in the complaint as true and construing those allegations in the light most favorable to Plaintiff, Plaintiff simply does not allege "sufficient factual matter" to state a retaliation claim against Counselor Robinson and Officer Searcy that is "plausible on its face." Iqbal, 556 U.S. at 678.

*3. Plaintiff's Failure to Protect Claim*

Under the Eighth Amendment, a prison official may not inflict cruel and unusual punishment, which includes a duty to protect an inmate from violence at the hands of other inmates. Purcell v. Toombs County, 400 F.3d 1313, 1319 (11th Cir. 2005). Although "prison officials have a duty [...] to protect prisoners from violence at the hands of other prisoners," not every instance of violence "translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 833-834 (1994) (quotations and citations omitted). It is only "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." Id. at 828. To state a cognizable failure to protect claim under the Eighth Amendment, the prisoner must establish: (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation.

7

Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013). "Merely negligent failure to protect an inmate from attack does not justify liability under Section 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

In this case, Plaintiff broadly alleges that all of the named Defendants failed to protect him from the substantial risk of serious harm posed by the unnamed other inmates who attacked him on August 17, 2011. More specifically, Plaintiff alleges that Counselor Robinson and Officer Searcy conspired to cause the attack and that Lieutenant Eaddie failed to intervene during the attack. Plaintiff further alleges that Commissioner Owens, Warden McLaughlin, Deputy Warden Hinton, Deputy Warden Moody, Unit Manager Bobbitt, and Unit Manager Davis, all of whom work in a supervisory capacity for the Georgia Department of Corrections, had been notified about the generalized, substantial risk of serious harm from inmate violence through Plaintiff's many grievances and appeals.

Even if the Court assumes the existence of a substantial risk of serious harm, Plaintiff fails to state a plausible claim for failure to protect because he does not plead sufficiently specific facts to demonstrate each individual Defendant's deliberate indifference. "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; [that is,] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Purcell, 400 F.3d at 1319-1320, quoting Farmer, 511 U.S. at 837. Nowhere in the complaint does Plaintiff allege that any particular Defendant was "aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists" and that any specific Defendant also "drew that inference." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003). Although Plaintiff alleges that every Defendant knew about the substantial risk of serious harm from inmate violence, "imputed or collective

knowledge cannot serve as the basis for a claim of deliberate indifference." Burnette v Taylor, 533 F.3d. 1325, 1331 (11th Cir. 2008). Instead, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." Id. Here, Plaintiff's indiscriminate allegations do not provide a viable basis for the Court to consider each individual Defendant's knowledge about the generalized, substantial risk of serious harm from inmate violence and the basis for each individual Defendant's knowledge. As such, Plaintiff does not allege sufficiently specific facts to allow the Court to infer deliberate indifference with regard to each individual Defendant's alleged failure to protect Plaintiff.

Plaintiff also does not allege sufficiently specific facts to allow the Court to infer that Lieutenant Eaddie failed to respond reasonably once he became aware of the attack. See Farmer, 511 U.S. at 845 (explaining that "prison officials who act reasonably cannot be found liable."). According to Plaintiff's complaint, two nonparty officers arrived on the scene within minutes of Plaintiff informing Lieutenant Eaddie, who was inside the dining hall, that he had been attacked by unnamed other inmates outside the dining hall. Plaintiff also alleges that he was escorted to the medical unit to receive treatment shortly after the attack. There is no allegation that Plaintiff suffered any additional harm during the brief period between the time Lieutenant Eaddie closed the exit door to the dining hall and the time two nonparty officers arrived on the scene to assist Plaintiff. Thus, Plaintiff's own factual allegations suggest that Lieutenant Eaddie acted reasonably, rather than unreasonably, once he learned that Plaintiff had been attacked by unnamed other inmates.

In addition, Plaintiff's failure to protect claim against any named Defendant in his or her supervisory capacity is not cognizable because supervisory officials cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior

or vicarious liability. Goebert v. Lee County, 510 F.3d 1312, 1331 (11th Cir. 2007); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). A supervisory official is liable only "'when the supervisor personally participates in the alleged constitutional violation or when there is causal connection between the actions of the supervising official and the alleged constitutional deprivation.'" Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007), quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). When considering whether a causal connection exists between the supervisor's action and the alleged constitutional deprivation, mere knowledge of a potential constitutional deprivation is not sufficient to impose liability. Iqbal, 556 U.S. at 677. Instead, the plaintiff must allege some purposeful action by the supervisor to deprive the plaintiff of a constitutional right in order to state a claim against the supervisor. Id.

Because Plaintiff does not allege any personal participation by Commissioner Owens, Warden McLaughlin, Deputy Warden Hinton, Deputy Warden Moody, Unit Manager Bobbitt, and Unit Manager Davis in the attack, the relevant inquiry is whether Plaintiff alleges a sufficient causal connection between Defendants' actions or inactions and the alleged constitutional deprivation suffered by Plaintiff. Plaintiff's complaint does not allege a sufficient causal connection for two reasons. First, Plaintiff fails to allege sufficiently specific facts to demonstrate that any particular Defendant instituted a custom or policy that resulted in deliberate indifference to Plaintiff's constitutional rights or that the facts support an inference that any particular Defendant directed his or her subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them. See West v. Tillman, 496 F.3d 1321, 1328 (11th Cir. 2007); see also Goebert, 510 F.3d at 1332 (explaining that "[d]emonstrating a policy or custom requires show[ing] a persistent and wide-spread practice."). Second, Plaintiff fails to allege sufficiently specific facts to demonstrate the existence of a history of widespread abuse of inmates at Macon

State Prison sufficient to put any particular Defendant on notice of the need to correct the alleged constitutional deprivation and that any particular Defendant failed to do so. See West, 496 F.3d at 1328-1329; see also Hartley, 193 F.3d at 1269 (explaining that "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.").

Accordingly, even after accepting the factual allegations in the complaint as true and construing those allegations in the light most favorable to Plaintiff, Plaintiff simply does not allege "sufficient factual matter" to state a failure to protect claim against Commissioner Owens, Warden McLaughlin, Deputy Warden Hinton, Deputy Warden Moody, Unit Manager Bobbitt, Unit Manager Davis, Lieutenant Eaddie, Counselor Robinson, and Officer Searcy that is "plausible on its face." Iqbal, 556 U.S. at 678.

B.    Eleventh Amendment Immunity for Official Capacity Claims

Alternatively, insofar as Plaintiff is attempting to proceed against the nine named Defendants in their official capacities, Defendants are entitled to Eleventh Amendment immunity. The Eleventh Amendment prohibits federal courts from exercising jurisdiction over lawsuits against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. Lassiter v. Alabama A & M University, 3 F.3d 1482, 1485 (11th Cir. 1993). Congress has not abrogated Eleventh Amendment immunity in Section 1983 cases. Robinson v. Ga. Dep't of Transp., 966 F.2d 637, 640 (11th Cir. 1992). Thus, if the state has not waived its immunity, the Eleventh Amendment bars Section 1983 cases against the state. Cross v. State of Ala., 49 F.3d 1490, 1503 (11th Cir. 1995). By extension, the Eleventh Amendment also bars Section 1983 cases against state officials sued in their official capacities

because in such cases, the state is considered to be the real party in interest since an award of damages would be paid by the state, and not the state official. Id. at 1503.

Here, the nine named Defendants sued in their official capacities as state officials are protected by Eleventh Amendment immunity. The State of Georgia expressly preserves its Eleventh Amendment immunity in the Georgia Constitution, Ga. Const. Art. 1, Sec. II, Para. IX(f), and as previously explained, any individually named Defendants sued in their official capacities as state officials are not persons. See Will v. Michigan Department of State Police, *et al*., 491 U.S. 58, 71 (1989) (stating that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Accordingly, Plaintiff's claims against the nine named Defendants in their official capacities are impermissible, and the Court could dismiss any individually named Defendants on this alternative basis.

C.     Qualified Immunity for Individual Capacity Claims

Alternatively, insofar as Plaintiff is attempting to proceed against the nine named Defendants in their individual capacities, Defendants are entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from civil trials [...] and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Santamorena v. Georgia Military College, 147 F.3d 1337, 1339-1340 (11th Cir. 1998) (quotations and citations omitted). Stated another way, qualified immunity "offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Oliver v. Fiorino, 586 F.3d 898, 904 (11th Cir. 2009) (quotations and citations omitted). A government official acting within the scope of his discretionary authority is entitled to qualified immunity "unless the plaintiff can

demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." Oliver, 586 F.3d at 905. Courts need not consider the two prongs of the qualified immunity analysis in sequence, and a failure to establish either prong requires the claim to be dismissed. Id., citing Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Here, Defendants are entitled to qualified immunity because the factual allegations in Plaintiff's complaint do not establish a cognizable constitutional violation, and because the illegality of Defendants' actions was not clearly established at the time of the alleged violation. See Oliver, 586 F.3d at 905. A constitutional right can be clearly established only if "the contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violated that right." United States v. Lanier, 520 U.S. 259, 270 (1997). Based on the factual allegations set forth in Plaintiff's complaint, it is impossible to conclude that Defendants would understand that what they did here violated Plaintiff's clearly established constitutional rights because preexisting case law does not demonstrate the apparent unlawfulness of Defendants' alleged actions or inactions. See Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent."). Accordingly, Plaintiff's claims against the nine named Defendants in their individual capacities are impermissible, and the Court could dismiss any individually named Defendants on this alternative basis.

## CONCLUSION

Because Plaintiff fails to state a cognizable retaliation or failure to protect claim upon which relief may be granted, and because Defendants are entitled to Eleventh Amendment

immunity for claims against them in their official capacities and qualified immunity for claims against them in their individual capacities, it is hereby **RECOMMENDED** that Defendants' Motions to Dismiss (Docs. 24, 38, 44) be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom the case is assigned **within fourteen (14) days** after being served with a copy thereof.

**SO RECOMMENDED**, this the 14th day of May, 2014.

                                                s/ Charles H. Weigle
                                                Charles H. Weigle
                                                United States Magistrate Judge